UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAMONT HEARD,

    Plaintiff,

v.                                                  Case No. 2:05-cv-231
                                                HON. GORDON J. QUIST

PATRICIA CARUSO, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Lamont Heard, an inmate currently confined at the Marquette Branch Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, defendants include Patricia Caruso, Straub, Dave Burnett, Robert Mulvaney, Jeri-Ann Sherry, Gregory McQuiggin, M. Brown, Steven Therrian, Sandy Shaw, Daniel Ezrow, Masker and Huhta. Plaintiff has asserted violations of the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In claim one, plaintiff alleges that on September 18, 2004, he was interviewed by defendant Lieutenant Therrian for statements that plaintiff made during a nation of Islam religious service. Plaintiff states that he received an Incite to Riot or Strike; Strike or Rioting misconduct after the interview. Plaintiff was told that he no longer may recite the history of black enslavement in this country and certain Bible verses during religious services because they "are not fitting in a prison setting." Allegedly, defendant Therrian indicated that he had spoken with defendants Caruso, Sherry, McQuiggin and Shaw and that Therrian was speaking for them. Plaintiff was informed that if he continued to speak on these matters, he would be transferred to a level five facility and

classified as a Security Threat Group (STG) member. Plaintiff was placed in administrative segregation on an unrelated Incite to Riot/Strike misconduct. On October 5, 2004, plaintiff alleges that he was told by defendant Therrian that all the defendants wanted plaintiff to know that plaintiff needed to sign off on his grievance or that he would be sorry. Plaintiff refused to sign off on the grievance.

That day, defendant Brown, Chippewa Correctional Facility STG local coordinator, took adverse action against plaintiff by proposing that plaintiff be designated as a member and recruiter of a gang called Intolerant/Subversive groups (claim two). Plaintiff filed a grievance stating that defendant Brown's action was in retaliation for plaintiff's previous grievance filing.

Plaintiff alleges that his procedural due process rights were violated because he never received notice by defendant Brown or the opportunity to be heard before defendant Mulvaney approved the designation (claim three). Plaintiff alleges that he filed a grievance against defendants Brown and Mulvaney for their actions in designating him a security threat.

In claim four, plaintiff alleges that he sent a kite to defendant Caruso asking that the matter be investigated and requesting removal of the STG II designation. On October 20, 2004, Warden Sherry responded by instructing defendant Brown to investigate plaintiff's complaint and plaintiff's request for STG II removal. On October 21, 2004, defendant Brown denied plaintiff's request and stated that plaintiff was not targeted due to his Nation of Islam membership, but did acknowledge that no gang documents were taken from plaintiff. Defendant Brown asserted that plaintiff made a call for "arms." Plaintiff was transferred to Baraga Maximum Correctional Facility from Chippewa Correctional Facility on October 21, 2004. After remaining misconduct free for six months, plaintiff filed a grievance on defendants Ezrow and Mulvaney because they refused to interview plaintiff for STG II removal. Plaintiff was released from administrative segregation.

In claim five, plaintiff alleges that defendants Brown and Ezrow told plaintiff that Intolerant/Subversive groups is a "special designation" that the MDOC Director uses to target members of the Nation of Islam who could not otherwise be labeled as gang members. Plaintiff alleges that other Nation of Islam members have been targeted in the same manner.

In claim six, plaintiff asserts that he has made repeated requests to defendants Burnett, Shaw, Sherry and Straub for meals in accordance with the dietary laws of plaintiff's religious beliefs. Defendants have responded by stating that plaintiff's proposed diet did not meet the nutritional standards set forth by the MDOC. Plaintiff's grievances on this issue were denied. In claim seven, plaintiff alleges that these defendants created a religious policy that favors Jewish and Buddhist prisoners. Plaintiff requests that defendants treat him in an equal manner.

In claim eight, plaintiff alleges that AMF mail room supervisor GOA Masker opened and read plaintiff's legal mail outside plaintiff's presence, despite plaintiff's request to have his legal mail opened only when he is present.

In claim nine, plaintiff alleges that defendant Huhta planted a .40 caliber bullet shell in plaintiff's footlocker during a search of plaintiff's cell. Plaintiff found the bullet shell, removed it with a finger nail clipper and placed it in a plastic bag. Plaintiff gave the shell to Resident Unit Officer Healy. Plaintiff then gave a statement to AMF sergeant McCledon. Defendant Huhta first denied searching plaintiff's cell. Plaintiff alleges that defendant Huhta planted the shell in retaliation for plaintiff's lawsuit. Plaintiff was preparing the complaint at the time the shell was planted. Plaintiff alleges that he asked defendant Huhta to use the prison telephone. Defendant Huhta denied the request and allegedly stated: "you are going to need more than the telephone if you file your lawsuit. That shell you found was your warning." Plaintiff alleges that defendant Huhta read plaintiff's complaint before it was filed when he searched plaintiff's cell.

Plaintiff has moved for preliminary injunction and summary judgment. Defendants move to dismiss the action because of misjoinder. Contrary to defendants' assertion, most of plaintiff's claims appear related to plaintiff's religious practice. The claims involve plaintiff's classification as an STG II prisoner and retaliatory acts arising from his grievance filings and lawsuit regarding that classification. Arguably, plaintiff's claim regarding his religious diet is separate, but the religious issues may be closely related. The one separate claim is the claim asserted against defendant Masker, which appears to involve an isolated incident. That claim will be easily resolved. Requiring plaintiff to file a separate lawsuit raising that one isolated claim would not be in the best interest of this Court's resources. Accordingly, in the opinion of the undersigned, defendants' motion to dismiss should be denied.

Plaintiff has filed a motion for a preliminary injunction requesting that the court order defendants to provide plaintiff an administrative hearing to determine whether plaintiff should continue his classification as an STG II designated prisoner. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
>
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).  It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights.  Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

Plaintiff moves for summary judgment. Defendants have not responded to plaintiff's motion. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff's motion for summary judgment and supporting brief reads more like a complaint than a dispositive motion. In fact, plaintiff's brief in support of his motion for summary judgment is essentially identical to his complaint. The brief simply makes allegations that could

potentially state claims upon which relief may be granted. There has been no attempt to show a lack of a genuine issue of material fact. Plaintiff's motion must be denied.

Accordingly, it is recommended that defendants' motion to dismiss (docket #41) be denied, plaintiff's motion for a preliminary injunction (docket #20) be denied, and plaintiff's motion for summary judgment (docket #35) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
     TIMOTHY P. GREELEY
     UNITED STATES MAGISTRATE JUDGE

Dated: April 3, 2006