UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAMONT HEARD,

    Plaintiff,

v.                                                        Case No. 2:05-cv-231
                                                           HON. GORDON J. QUIST

PATRICIA CARUSO, et al.,

    Defendants.
_____/

## OPINION AND ORDER MODIFYING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

    The Court has reviewed the Report and Recommendation filed by the United States Magistrate Judge in this action. The Report and Recommendation was duly served on the parties. The Court has received objections from plaintiff. In accordance with 28 U.S.C. § 636(b)(1), the Court has performed *de novo* consideration of those portions of the Report and Recommendation to which objection has been made.

    Plaintiff first argues that defendants Caruso, Straub, Sherry and McQuiggin should not be dismissed from this action for lack of personal involvement. Plaintiff claims that defendant Therrian told plaintiff that defendants Caruso, Straub, Sherry and McQuiggin were all involved in authorizing policy which violated plaintiff's First Amendment rights. Clearly, plaintiff has named these defendants solely because they have some supervisory capacity. Plaintiff cannot rely on a hearsay statement to support his claim of personal involvement. Similarly, plaintiff cannot establish personal involvement by asserting that a defendant responded to his grievances. The undisputed

facts establish that defendants Caruso, Straub, Sherry and McQuiggin lack any personal involvement regarding plaintiff's claims.

Plaintiff asserts that his intolerant/subversive STG II designation violated his procedural due process and substantive due process rights. Plaintiff relies upon *Austin v. Wilkinson*, 204 F.Supp.2d 1024 (N.D. OH. 2002), *aff'd in part and rev'd in part*, 372 F.3d 346 (2004). On appeal to the United States Supreme Court, the case was reversed in part and remanded. *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384 (2005). The Supreme Court held that inmates did have a liberty interest to avoid assignment to the State of Ohio's supermax prison, but also concluded that informal procedures for placement were adequate to protect that interest. In determining whether placement in the supermax prison was atypical in relation to the ordinary incidents of prison life, the Court noted that almost all human contact is prohibited, conversation is prohibited from cell to cell, lights may be dimmed, but are on 24 hours per day, and daily exercise is limited to one hour per day in a small indoor room. Most importantly, the distinguishing factors of confinement in the supermax prison from the facts presented in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), include the indefinite duration of time confined in the supermax prison and that placement in the prison disqualified the prisoner from parole.

The severe restrictions imposed in *Austin* are different than the restrictions imposed on plaintiff when he was designated an STG II. Plaintiff was placed in a higher security prison in administrative segregation. Plaintiff's placement in administrative segregation was only temporary. Plaintiff is currently housed at a different maximum security prison. However, plaintiff's placement in the maximum security prison was not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300.

Moreover, plaintiff cannot establish a violation of his due process rights. Plaintiff was called into the Captain's office and his actions were discussed. Plaintiff received a misconduct hearing and was found guilty of Incite to Riot or Strike: Rioting or Striking. Based upon plaintiff's conduct, he was placed on STG II status. Similarly, plaintiff's assertions that he was continued on STG II status without due process is unfounded under these circumstances. Plaintiff was not deprived of a liberty interest as a result of his increased classification.

Plaintiff alleges that defendant Brown fabricated his misconduct ticket in retaliation for plaintiff's grievance activities, which ultimately caused plaintiff's intolerant/subversive STG II designation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendants' alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff's retaliation claim fails because defendants have established that plaintiff's designation to a higher classification level was the result of his conduct and not based upon the filing of a grievance. Under these circumstances, plaintiff's designation to a higher classification level could not deter an ordinary person from engaging in further grievance filings.

Plaintiff alleges that his equal protection rights were violated by being designated as an STG II prisoner and placed in a higher classification. Plaintiff is a black, Muslim member of the Nation of Islam. Plaintiff argues that only Nation of Islam members are designated intolerant/subversive. Plaintiff alleges that other non Nation of Islam members who have been guilty of Incite to Riot or Strike misconducts were not designated intolerant/subversive. Plaintiff's simplistic argument fails to support an equal protection violation. Plaintiff cannot show that he was similarly situated with every individual that has been found guilty of Incite to Riot or Strike who were not placed on STG II status. The misconduct ticket was not the factor that caused plaintiff's designation and higher security classification. Rather, plaintiff's own actions resulted in the designation.

Plaintiff argues that defendant Huhta retaliated against him by placing a .40 caliber shell in plaintiff's cell. No adverse conduct resulted from the shell found in plaintiff's cell. Defendant Huhta has speculated that the shell casing may have fallen from his pocket while he was searching plaintiff's cell after he left the practice shooting range. There exists no evidence that the shell was intentionally placed in retaliation for any alleged protected conduct. This entirely speculative claim cannot support a retaliation claim under *Thaddeus-X*.

Plaintiff alleges that defendants' policies regarding religious meals discriminate against Islamic prisoners, but favor Jewish and Buddhist prisoners. Plaintiff alleges that Jewish and Buddhist prisoners are accommodated by religious meals, but his religion is not accommodated. Plaintiff requested a specific "Nation of Islam" diet. Plaintiff's request was denied because the Food Service Director determined that it was not possible to meet nutritional requirements in providing the specific plan proposed by plaintiff. The MDOC had already made a determination rejecting a

Nation of Islam menu years prior to plaintiff's request for a religious diet, because the menu failed to meet dietary requirements. Moreover, according to defendant Burnett, plaintiff actually requested a Kosher diet. That request was denied because the Nation of Islam does not require a member to keep Kosher. A Kosher diet exceeds the requirements of Muslim prisoners. Defendant Burnett explained that "Muslims can select the non-meat entree at the occasional meals when pork is served on the main meal line." Affidavit of defendant Burnett, docket # 86.

Furthermore, plaintiff claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 of the RLUIPA states:

(a) General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). Under the circumstances of this case, plaintiff cannot show that defendants substantially burdened his ability to practice his religious beliefs by refusing to provide the specific diet that plaintiff requested or by refusing to provide a Kosher diet which exceeded the requirements

of plaintiff's religious beliefs. Plaintiff is able to accomplish his dietary goals by eating his religiously mandated food items off the main menu.

Plaintiff also alleges that his First Amendment rights to express his religious beliefs were violated because defendants questioned his statements regarding the Bible and policies for the Iraq war. However, the facts establish that plaintiff was classified to a higher security level because of his assertions advocating acts of violence.

Plaintiff alleges that he fully supported his First Amendment claim regarding the opening of legal mail outside his presence. Plaintiff alleges that he attached the envelope from attorney Sandra Girard as an exhibit to his responsive brief. Defendant Masker stated that he was not aware of what occurred, but if in fact the mail was opened it was simply an isolated mistake. Defendant Masker recognized that plaintiff's legal mail should be opened only in plaintiff's presence. Plaintiff has a First Amendment right to be present when his incoming legal mail is opened for inspection. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993). Defendant Masker concedes that plaintiff made a request to have his legal mail opened only in his presence. Plaintiff has submitted the envelope that was allegedly opened. The envelope is clearly addressed from an attorney and states "Attorney/Client Mail - Confidential." Accordingly, a question of fact exists whether defendant Masker violated plaintiff's First Amendment rights.

THEREFORE, IT IS ORDERED that the Report and Recommendation of the Magistrate Judge (Docket #130) is approved as modified by this opinion. Defendants' motion for summary judgment (Docket #76) is GRANTED IN PART. All claims and defendants shall be DISMISSED from this action except plaintiff's claim against defendant Masker for opening

plaintiff's legal mail outside plaintiff's presence. It is further ordered that plaintiff's motion to dismiss (Docket #127) is DENIED.

Plaintiff has also filed a motion to disqualify the undersigned and Magistrate Judge Greeley from this case for personal bias against plaintiff in favor of defendant prison officials. Plaintiff brings his motion under 28 U.S.C. §§ 144 and 455. Plaintiff bases his entire motion on the fact that Magistrate Judge Greeley recommended dismissal of this case. Plaintiff disagrees with that recommendation. Plaintiff's reasons for disqualification are baseless. Moreover, plaintiff's motion is based completely on his anticipation that his case will be dismissed and that he will not receive *de novo* review. Plaintiff has had a full opportunity to submit his objections to the Report and Recommendation which have been considered by this court. Plaintiff's motion for disqualification (Docket #140) is DENIED.

It is further ordered that plaintiff's motion for hearing (Docket ## 132 and 138) and motion to strike (Docket #139) are DENIED.


Dated: February 6, 2007                           /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE