UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAMONT HEARD,

      Plaintiff,                          Case No. 2:05-cv-231

v.

PATRICIA CARUSO, et al,               HONORABLE PAUL L. MALONEY
                                          Chief United States District Judge

      Defendants.

_____/

## OPINION AND JUDGMENT

Plaintiff Lamont Heard, an inmate currently confined in the MDOC, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on September 23, 2005.  In his original complaint, Plaintiff named Defendants Patricia L. Caruso, Dennis Straub, Dave J. Burnett, Robert Mulvaney, Jeri-Ann Sherry, Greg McQuiggin, Michael Brown, Steven Therrian, Sandy Shaw, Daniel Ezrow, Unknown Masker, and Unknown Huhta.  On February 6, 2007, the court granted defendants' motion for summary judgment and dismissed all of plaintiff's claims, except for his claim against Defendant Masker.  On May 20, 2008, plaintiff received a trial on his claims against Defendant Masker and, on May 28, 2008, judgment was entered for Defendant Masker.  Plaintiff filed an appeal on June 11, 2008, and on August 27, 2009, the Sixth Circuit vacated the district court's grant of summary judgment for defendants on plaintiff's procedural due process, equal protection, and statutory claims under the Religious Land Use and Institutionalized Prisoners Act " RLUIPA", and remanded those claims for further proceedings.  *Heard v. Caruso, 351 F App'x 1 (6th Cir. 2009)* However, the Sixth Circuit affirmed the district court in all other respects. Plaintiff was appointed counsel on July 7, 2010 (docket #370).

On November 4, 2010, plaintiff filed an amended complaint (docket #382), which names Defendants Dennis Straub, Dave J. Burnett, Robert Mulvaney, Jeri-Ann Sherry, Michael Brown, and Sandy Shaw.  Plaintiff alleges without contradiction from defendants, that in 2004 and all times pertinent thereafter,  he was confined in the prison facilities of the Michigan Department of Corrections (MDOC) and that he is a member of the Nation of Islam (NOI).

Plaintiff asserts that members of the NOI are required to eat in accordance with certain dietary restrictions and that he has repeatedly requested that Defendants Straub, Burnett, Sherry, and Shaw accommodate his request for an NOI diet.  Plaintiff Heard further alleges that Defendants Straub, Burnett, Sherry and Shaw have refused to comply, stating that such a diet cannot meet the MDOC required nutritional standards. Plaintiff contends that this denial has placed a substantial burden on his ability to freely exercise his religious beliefs.

Plaintiff claims that defendants' actions violated his equal protection rights given the accommodation of religious diets for Jewish and Buddhist prisoners, as well as his rights under the RLUIPA. Plaintiff is seeking compensatory and punitive damages, as well as declaratory relief and injunctive relief.

Defendants assert a defense of  qualified immunity on plaintiff's claim that he was denied a Nation of Islam (NOI) diet.  With regard to plaintiff's equal protection claim regarding his diet, the Sixth Circuit stated:

> "[When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987).  We have explained that in the prison context "policies infringing on religious rights may be found unreasonable where accommodations are made for others." *Turner v. Bolden*, 8 F. App'x 453, 456 (6th Cir. (unpublished order). If the defendants can show that the Nation -of-Islam diet requested by Heard fails to meet nutritional standards, we believe that the refusal to provide this diet would be "reasonably

> related to legitimate penological interests." *Turner*, 482 U.S. at 89.
> The defendants have come forward with some evidence that the
> Nation-of-Islam diet is nutritionally inadequate—the affidavit of
> defendant Burnett, who evidently consulted the MDOC documents
> in which it was determined that the Nation-of-Islam diet was
> inadequate. However, it appears that Heard has been denied
> discovery of the MDOC documents and, therefore, denied the
> opportunity to dispute defendants' evidence.

*Heard* 351 F App'x, at 12.

Defendants assert that the decision to refuse plaintiff's request for a NOI diet satisfies the

rational basis test set forth in *Turner v. Safely*, so that they are entitled to judgment on this claim.

To determine whether a prison official's actions are reasonably related to a legitimate penological

interest, the Court must assess the official's actions by reference to the following factors:

> 1. does there exist a valid, rational connection between the prison
> regulation and the legitimate governmental interest put forward to
> justify it;

> 2. are there alternative means of exercising the right that remain open
> to prison inmates;

> 3. the impact that accommodation of the asserted constitutional right
> will have on guards and other inmates, and on the allocation of prison
> resources generally; and

> 4. whether there are ready alternatives available that fully
> accommodate the prisoner's rights at de minimis cost to valid
> penological interests.

*Flagner*, 241 F.3d at 484 (*Flagner v Wilkinson,* 241 F.3d 475, 484 (6th Cir. 2001) quoting

*Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the

remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("A

regulation cannot be sustained where the logical connection between the regulation and the asserted

goal is so remote as to render the policy arbitrary or irrational").  If the first factor is satisfied, the

remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id*. (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.

The Court conducted a bench trial on plaintiff's claims on September 13, 2011. Plaintiff relied on his own testimony and exhibits entered into the record. Defendants called several witnesses including Gatha McClellan, Dave Burnett, Dennis Straub, Jeri Ann Sherry, and Sandy Shaw. After proofs closed, the court heard closing argument and took the matter under advisement to render a written opinion.

### Findings of Fact

Plaintiff submitted zero evidence that Defendants Straub, Sherry, and Shaw had any substantive role either in the denial of plaintiff's diet requests or in the formulation of MDOC policy which caused the alleged infringement of plaintiff's Constitutional or statutory rights. Accordingly, a judgment of no cause for action will be entered as those individuals.

Plaintiff is a member of the Nation of Islam. From time to time before commencement of this action, he requested of MDOC officials the availability of a diet consistent with his religion as outlined in *How To Eat To Live* by the prophet of his religion, Elijah Mohammed. Plaintiff's testimony outlined the nature of his religious belief which the defendants do not question as sincerely held for purposes of this record. He testified that eating well is vital to his spiritual life and if not permitted to do so consistent with his faith, he does not receive the full benefit of his

religion.  The NOI diet essentially contains two aspects, food consumption restrictions and sanitation in the preparation of the permissible foods, on the latter point, specifically segregation from food which is banned by the NOI diet. MDOC officials had denied plaintiff's requests during the administrative process on nutritional, cost, and security of institution grounds.

One aspect of the NOI diet as contained in the exhibits (i.e. the material forwarded to MDOC officials for its consideration of defendant's request) concerned the mandate that NOI diet adherents consume only one meal a day. At trial, however, the plaintiff posited the notion that it was acceptable that more than one meal may be taken in a prison setting as an exception to the one meal directive. During the administrative proceedings and prior to trial, the defendants had taken the position that the requirement of one meal per day and the concomitant need for prisoners to ingest 2900 calories per day to meet national nutrition standards were hopelessly in conflict. Accordingly, the MDOC had refused to offer the NOI for this reason, among others. Ms McClellan conceded during her trial testimony that if the dietary restrictions of the NOI regime were broken up into three meals, the nutritional standards of 2900 calories could be achieved. She was careful however to opine that other nutritional goals/factors such as food variety, cost, especially relating to the restrictive rotation of food items and the cost related to sanitation requirements could be prohibitive. In addition, she testified that security concerns, that is grouping of NOI prisoners in a limited number of institutions, would countenance against the offering of the diet.

It is apparent to the court, upon review of the materials supporting plaintiff's administrative requests, including the referenced *How To Eat To Live*, that a so called "three meal option" was <u>not</u> within the fair interpretation of  plaintiff's administrative request and the MDOC denial did not contemplate a three meal "option." See Exhibits 5, 6, 7, 8, 9.

Ms. McClellan is a highly qualified expert in the field of nutrition and food service in a

prison institution setting. Her last position with the MDOC was Food Service Administrator for all corrections facilities in the state of Michigan. She testified without contradiction that she was familiar with the books of Elijah Mohammed including *How To Eat To Live*. Her recommendation after review of Mr. Heard's NOI diet request was to deny based upon her professional opinion that consumption of 2900 calories at one meal was violative of nutritional norms and therefore in violation of MDOC policy to provide adequate sustenance for prisoners. The Court accepts this opinion. It is unrebutted in this case.

Ms. McClellan' generally conclusory testimony regarding significantly increased cost to offer the NOI diet is less strong, but nonetheless ultimately persuasive, as to the large number of items that would have to be excluded from an NOI diet. Exhibit 10 lists the prohibited foods of an NOI diet. In great contrast to the available Kosher diet which excludes only pork, the exclusion list for the NOI diet is extensive. The Court credits Ms. McClellan's testimony that increased costs would be incurred by the MDOC to accommodate the diet and the fulfillment of sanitation requirements  and that those costs, although not described specifically in the record, would not be merely de minimis. The Court further finds that no readily available alternative on this score  at de minimis cost to, fully accommodates the plaintiff.

As indicated previously, the defendants interposed a defense of security as additional justification for denial of the NOI diet. Defendants evidentiary proofs on this record, however, are woefully lacking.  The MDOC witnesses provided no convincing evidence of security concerns regarding the implementation of an NOI diet. Based on a pre-trial review of the pleadings, the court anticipated some testimony regarding security dangers surrounding the grouping of a large number of NOI prisoners in a limited number of prisons that would offer the NOI diet. No such testimony was elicited because such a problem would not exist.  In response to the Court's questions, Mr

Burnett estimated that the gross number of NOI prisoners did not exceed the number of Jewish prisoners for whom a Kosher diet has been provided pursuant to policy for some years. The Court concludes on this record that security concerns cannot justify denial of the NOI diet. The Court recognizes that Mr. Burnett's prisoner count was an estimate which may or may not be ultimately accurate in the future, but that is the only proof in the record in this case.

**Conclusions of Law**

In his post-trial brief, plaintiff argues strongly Ms. McClellan's concession that nutritional standards could be met if plaintiff was afforded the NOI diet in three separate meals and that therefore, he should prevail in this action on his equal protection claim.  First, plaintiff stretches Ms. McClellan's testimony. While it is accurate to state that she conceded that the 2900 calorie standard could be accomplished with the NOI diet over three meals a day, rather than one, Ms. McClellan clearly had other reservations about the diet, even if offered over three meals daily.  Accordingly, plaintiff cannot prevail based upon this concession during her testimony. In addition, there is a significant legal hurdle which the plaintiff cannot scale on his new-found theory that providing the NOI diet over three meals a day is acceptable to his faith and was part of his original request to the Department. That is, he failed to exhaust his administrative remedies on this alternate means of accommodating his religion.

Having reviewed the documentary evidence, it is clear that the MDOC properly analyzed plaintiff's administrative request and his theory of the case (until the taking of testimony) as a one meal per day request with a menu conforming to the restrictions as to food items and sanitation. The *How to Eat to Live* excerpts in this record reflect one meal per day. Chaplain Burnett, as Special Activities Coordinator for 15 years, was familiar with the NOI diet and the Holy Quran and *How to Eat to Live*. He fairly interpreted the request as one meal per day.  The MDOC denied on that basis

for nutritional reasons and others as outlined. Plaintiff's post-trial submission seeks to walk away from the documentation he submitted in support of his request. The MDOC cannot be placed in the position of speculating what portions of the Holy Quran or *How to Eat to Live* were somehow optional portions of the plaintiff's administrative request.  The references to one meal a day are explicit. Plaintiff's Exhibit 5 does not speak to the issue of multiple meals. Exhibit 10 (D/E#1-85, pp. 6-7, and 9-9 and D/E#408-5, pp. 24-26 of 55) do not speak to the issue of multiple meals. As to what amounts to an  amended request for three meals a day of the NOI diet, plaintiff has not exhausted his administrative remedies.  See *Jones v. Bock*, 549 U.S. 199, 205 (2007).

Under the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e (a), prisoners are required to first "properly"exhaust any administrative remedies before filing suit. *Siggers v. Campbell,* 652 F3d, 681, 691 (6th Cir. 2011)   Defendants have not had the opportunity to vet a three meals per day request from the plaintiff. They responded fairly within the four squares of his administrative request and indeed his claims prior to trial.  Accordingly, to the extent that plaintiff seeks relief from this court on the basis that three meals per day of the NOI diet will satisfy his Constitutional and statutory claims, he has not exhausted his administrative remedies. So that claim is not properly before the court.  Accordingly, those claims are dismissed.

Plaintiff's exhausted claim concerning denial of a NOI diet ultimately fails. A prison regulation legally impinges on an inmate's constitutional rights if it is reasonably related to a legitimate penological interest. Turner v Safely, 482 U.S. 78, 79 (1987). In its remand order, the Sixth Circuit held that if the MDOC could show that the NOI diet as requested by plaintiff failed to meet nutritional standards, that would be a restriction "reasonably related to legitimate penological interest". *Heard*, 361 F.App'x at 10 (6th Cir. Aug. 27, 2009) (docket #273). Defendants have met their burden.

Ms. McClellan testified without effective contradiction that the NOI diet utilizing one meal per day did not meet nationally recognized nutritional standards which by policy were required by the MDOC. It is beyond peradventure that prison authorities are duty bound to provide meals that meet appropriate nutritional standards for those incarcerated. Such standards contribute to the health and well-being of all prisoners. Failure to do so would more than likely constitute a violation of the Eighth Amendment. See *Youngblood v. Romeo*, 457 U.S 307, 315-16 (1987). Clearly, there is a rational connection between the prison regulation and the legitimate governmental interest put forward by the MDOC to justify its denial of a NOI diet.

Concerning the second Turner factor, plaintiff's request concerned an NOI diet in conformity with *How to Eat to Live*. Within the confines of that request (one meal per day), there is no alternative open to plaintiff given the denial of his request. If he insists on one meal per day consistent with his religious beliefs, he must violate this tenet of his belief to nourish himself.

Concerning the third Turner factor, the MDOC asserted that implementation of the sanitation requirements requested would impact costs of operations. The proofs were hardly robust in this regard, but from the circumstantial evidence concerning segregation of the extensive list of prohibited foods in *How to Eat to Live* (in contrast to the limited number of prohibitive foods for the offered Kosher meals), the court accepts the defendant's testimony that significant additional resources to segregate storage and preparation of food pursuant to the NOI diet would be attendant to the granting of his request. The Court does not accept plaintiff's assertion that because the MDOC has accepted the costs associated with Kosher meals (sanitation and pork restrictions), accommodation of the costs associated with the NOI diet should be borne. Additionally given the length of the prohibited list of foods, the court accepts the testimony of Ms. McClellan that significant additional food costs would be attendant to an attempt to provide nutritious food consistent with the NOI diet and also provide

for the dietary needs of all the other prisoners in the system. As aforesaid, elimination of pork from the menu is but a small percentage of actions necessary to conform the menu to the NOI diet, according to Ms. McClellan's expert testimony.  Based on the evidence, costs to the resource-strapped penal institutions of Michigan to implement the NOI diet are of significantly different magnitude than the Kosher diet program. Of note, plaintiff argues that cost has been rejected as a justification satisfying strict scrutiny, citing *Mem'l Hosp. V. Maricopa Cnty*, 415 U. S. 250, 263 (1974) and other cases. But such citations are inapposite here. Justice O'Connor's opinion in *Turner* clearly states that strict scrutiny is <u>not</u> the test in the context of prison operations, see *Turner*, Y82 U.S. at 89, because it would seriously hamper prison officials ability to anticipate security problems and "to adopt innovative solutions to the intractable problems of prison administration." *Id.*

As to the fourth Turner factor, the court finds that there is no ready alternative that 1) fully accommodates plaintiff at 2) de minimis cost to valid penological interests.

Accordingly, having balanced together the final three *Turner* factors, *Flagner*, 241 F. App'x at 484, the court concludes that the greater weight falls in favor of defendants. Therefore, on plaintiff's equal protection claim, a judgment of no cause of action will be entered in favor of the remaining defendants.

 <u>RLUIPA Claim</u>

RLUIPA provides:

[n]o government shall impose a substantial burden on the religious
exercise of a person residing in or confined to an institution . . .
even if the burden results from a rule of general applicability,
unless the government demonstrates that imposition of the burden
on that person—

(1) is in furtherance of a compelling governmental
interest; and

(2) is the least restrictive means of furthering that
compelling governmental interest.

42 U.S.C. § 2000cc-l(a).

Plaintiff must exhaust his administrative remedies before filing a RLUIPA claim. *Risher v. Lappin*, 639 F.3d. 236-240 (6th Cir. 2011); *Watler v. Campbell*, 33 F. App'x 764, 765 (6th Cir. 2002). As noted above, plaintiff has failed to do so as to his trial testimony that a NOI diet with three meals a day would satisfy his religious tenets.  However, during the administrative process, plaintiff did request access to the Kosher diet which was denied.  Exhibit 1, Memo of Defendant Burnett of March 6, 2003.

As to this request/claim under RLUIPA, the court finds that the refusal to provide the Kosher diet constitutes a substantial burden on his religious exercise. See *Hoevenaar v. Lazaroff*, 422 F.3d 366, 368 (6th Cir. 2006). The outright denial must therefore be "the least restrictive means" towards furthering a "compelling governmental interest [strict scrutiny]." *Cutter v Wilkinson*, 544 U.S. 709, 712 (2005) (quoting 42 U.S.C. 2000cc-1(a)-(2)(2000)).

First, defendant has proffered prison security as one valid reason for denying the diet.  See *Id*. at 723, explicitly states that prison security is a compelling state interest. However, defendant's proofs in this regard are unpersuasive for the reasons stated earlier. Other than mere assertion, the state defendants did not develop evidence of security ramifications in a manner that satisfy this court. Concerns about numbers of NOI prisoners requesting dietary accommodations  and its alleged negative impact on security because of grouping of prisoners in a limited number of prison facilities, was fatally undermined by Chaplain Burnett's testimony concerning the gross number of NOI inmates. Accordingly, the court does not accept prison security as a compelling state interest, justifying denial of the Kosher diet accommodation.

Second, defendants assert the compelling governmental interest to  provide proper nutrition for prisoners. Defendant has demonstrated that no alternative exists to provide an NOI diet in one meal sitting as requested by plaintiff for the reasons stated earlier. See *Youngblood*, 457 U.S. at 322-23.  Whether an alternative short of outright denial in the context of a future exhausted claim for an NOI diet utilizing a three meals per day modality is not before this court. Clearly, defendants have not had the opportunity to apply their expertise and experience as prison administrators to such a request. 146 Cong. Rec. 16698 (2000).

However, the Court notes that plaintiff, consistent with his earlier administrative request, testified, without contradiction, that consuming the Kosher diet offered by the MDOC would be an acceptable alternative in compliance with his religious tenets.  The defendants proffered no contradictory testimony at trial.  The Court does not accept the conclusory assertions in Exhibit 1 to contradict plaintiff's testimony.  Accordingly, on this record, the Court finds that the least restrictive means of furthering the compelling governmental interest in providing nutrition to plaintiff <u>and</u> avoiding a substantial burden on plaintiff's religious exercise is to permit plaintiff access to the existing Kosher diet.

To be clear, the scope of the Court's injunction is confined in all aspects of food service to the parameters of MDOC present practice of the Kosher diet and future amendments deemed appropriate by the MDOC.  The intent of the Court is to order the plaintiff access to the Kosher diet as administered by the MDOC presently and in the future - nothing more, nothing less.

## <u>JUDGMENT</u>

The Court enters the following Judgment:

1. Defendants Straub, Sherry, and Shaw shall have a judgment of no cause for action and

Plaintiff's claims as to those defendants are dismissed with prejudice.

2. For failure to exhaust his administrative remedies, plaintiff's equal protection claims against all remaining defendants are dismissed with prejudice.

3. As to plaintiff's statutory claim under RLUIPA for access to the Kosher diet as presently offered and in the future offered by the MDOC, plaintiff shall have judgment in his favor.

4. Forty-Two (42) days after the entry of this Judgment, Defendant Caruso, the Director of the Department of Corrections, and all successors thereafter, are enjoined from denying the Kosher diet to plaintiff under the same terms and conditions that such diet is offered to Jewish prisoners pursuant to the rules and regulations of the Department.

**IT IS SO ORDERED**.


DATED: March 20, 2012             /s/ Paul L. Maloney                      
                                  Honorable Paul L. Maloney
                                  Chief United States District Judge